UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X

Penny Pace, Individually and on Behalf of All          :
Others Similarly Situated,

        Plaintiff,

  -against-                                                        Case No.:

Timothy Quintanilla, Henry Mendoza, Bill          :
Torres, James Francis Berger, and Cindy E.
Gonzalez,                                                             :

        Defendants.                                      :

                                                 :

------------------------------------- X

**13 CV 0091**

JAN 0 4 2013

## PLAINTIFF'S CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**THE ROSEN LAW FIRM, P.A.**

Laurence M. Rosen, Esq. (LR 5733)
Timothy W. Brown, Esq. (TB 1008)
Phillip Kim, Esq. (PK 9384)
275 Madison Avenue
34th Floor
New York, NY 10016
Tel: 212-686-1060
Fax: 212-202-3827

*Counsel for Plaintiff*

Plaintiff Penny Pace, individually and on behalf of all other persons similarly situated, by her undersigned attorneys, alleges in this Complaint the following upon knowledge with respect to her own acts, and upon facts obtained through an investigation conducted by her counsel, which included, inter alia: (a) review and analysis of relevant filings made by Electronic Game

Card, Inc. ("EGMI" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of defendants' public documents, conference calls and press releases; (c) review and analysis of securities analysts' reports and advisories concerning the Company; (d) information readily obtainable on the Internet; and (e) interviews of several witnesses with personal knowledge of the relevant facts.

Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.  Most of the facts supporting the allegations contained herein are known only to defendants or are exclusively within their control.

## I.     NATURE OF THE ACTION

1.     This is a federal class action on behalf of purchasers of the common stock of EGMI (the "Class") between April 5, 2007 and February 19, 2010, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## II.    JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Section 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

4.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as a substantial part of the conduct complained of herein occurred in this District.

5.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendant, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## III.    PARTIES

6.      Plaintiff Penny Pace purchased EGMI common stock during the Class Period as set forth in her certification, filed herewith, and has suffered damages as a result..

7.      Defendant Timothy Quintanilla, resides in California. He is a certified public accountant licensed by the California Board of Accountancy.  During the Class Period, he was the engagement partner at Mendoza Berger & Co., LLP ("M&B"), a public accounting firm, which issued clean audit opinions for EGMI's year-end financial statements for 2006, 2007, and 2008.

8.      Defendant Henry Mendoza, upon information and belief, resides in California. He is a certified public accountant.  During the Class Period, he was a managing partner at M&B.

9.      Defendant Bill Torres, upon information and belief, resides in California. He is a certified public accountant.  During the Class Period, he was a managing partner at M&B.

10.      Defendant James Francis Berger, upon information and belief, resides in California. He is a certified public accountant.  During the Class Period, he was a senior partner at M&B.

11.      Defendant Cindy E. Gonzalez, upon information and belief, resides in California. She is a certified public accountant.  During the Class Period, she was a partner at M&B.

## IV.    RELEVANT ENTITIES

12.      M&B was a public accounting firm during the Class Period.  M&B was registered with the Public Company Accounting Oversight Board ("PCAOB") and the California Board of

Accountancy.  M&B filed for Chapter 7 bankruptcy protection in the United States Bankruptcy Court for the Central District of California on June 8, 2012. M&B issued clean audit opinions for EGMI's year-end financial statements for 2006, 2007, and 2008.

13.     EGMI is a Nevada corporation with its principal executive offices located at 5405 Alton Parkway, Suite A-353 Irvine, CA 92604.  EGMI designs and manufactures innovative "instant" win, extended play gaming device using patent protected technology.  The Company's common stock is traded on the NASDAQ Bulletin Board under ticker "EGMI."

## V.     <u>SUBSTANTIVE ALLEGATIONS</u>

14.     The Class Period begins on April 5, 2007 when the Company issued a materially false annual report for the fiscal year ended December 31, 2006 on Form 10-KSB.  The 10-KSB was false and misleading because the Company violated Generally Accepted Accounting Principles ("GAAP") by misrepresenting its assets and true financial condition in its financial statements.

15.     Attached to the 10-KSB were separately signed Sarbanes-Oxley Act of 2002 ("SOX") certifications that the Company's financial statements were accurate, that the financial statements did not omit to state a material fact, and that any fraud, whether or not material, that involved management or other employees who have a significant role in the registrant's internal control over financial reporting was disclosed to the Company's auditors.

16.     Included in the 10-KSB was M&B's unqualified audit opinion that stated that M&B had conducted an audit of EGMI's financial statements for the fiscal year ended December 31, 2006 in accordance with the standards of the PCAOB and that, in M&B's opinion, those statements presented fairly, in all material respects, the financial position of EGMI.

17.     On March 26, 2008 the Company issued a materially false annual report for the fiscal year ended December 31, 2007 on Form 10-KSB  The 10-KSB was false and misleading

because the Company failed to follow GAAP by misrepresenting its assets and true financial condition.

18.     Attached to the 10-KSB were separately signed SOX certifications that the Company's financial statements were accurate, that the financial statements did not omit to state a material fact, and that any fraud, whether or not material, that involved management or other employees who have a significant role in the registrant's internal control over financial reporting was disclosed to the Company's auditors.

19.     Included in the 10-KSB was M&B's unqualified audit opinion that stated that M&B had conducted an audit of EGMI's financial statements for the fiscal year ended December 31, 2007 in accordance with the standards of the PCAOB and that, in M&B's opinion, those statements presented fairly, in all material respects, the financial position of EGMI.

20.     On March 24, 2009 the Company issued a materially false annual report for the fiscal year ended December 31, 2008 on Form 10-K.  The 10-K was false and misleading because the Company failed to follow GAAP by misrepresenting its assets and true financial condition.

21.     Attached to the 10-K were separately signed SOX certifications that the Company's financial statements were accurate, that the financial statements did not omit to state a material fact, and that any fraud, whether or not material, that involved management or other employees who have a significant role in the registrant's internal control over financial reporting was disclosed to the Company's auditors.

22.     Included in the 10-K was M&B's unqualified audit opinion that stated that M&B had conducted an audit of EGMI's financial statements for the fiscal year ended December 31,

2008 in accordance with the standards of the PCAOB and that, in M&B's opinion, those statements presented fairly, in all material respects, the financial position of EGMI.

23.     The Company's interim quarterly reports filed with the SEC during the Class Period were also materially false and misleading because in, violation of GAAP, they misrepresented the Company's true financial condition.

24.     EGMI's auditor, M&B, is liable for violating the most fundamental principles of Generally Accepted Auditing Standards ("GAAS") in issuing its materially false and misleading unqualified audit opinions regarding EGMI's 2006, 2007, and 2008 financial statements.

25.     At the direction of engagement partner Quintanilla, M&B issued its audit opinions regarding EGMI's 2006, 2007, and 2008 financial statements.

26.     M&B and Quintanilla knowingly or recklessly misrepresented that M&B had conducted audits of EGMI's financial statements in accordance with the standards of the PCAOB and that, in M&B's opinion, those statements presented fairly, in all material respects, the financial position of EGMI.

## VI.     TRUTH BEGINS TO EMERGE

27.     On February 10, 2010, the Company issued an announcement delaying a previously scheduled conference call scheduled for that day to February 25, 2010.   The announcement states that the delay was required "in order to include business developments on which the company is currently working."   Upon information and belief, this delay was a materialization of the undisclosed fraud.

28.     The February 10, 2010 announcement caused the Company's stock to fall 15.8% of $.169 per share on February 10, 2010, on over 1.65 million shares traded that day.   The previous trading day, only 229,000 shares traded hands.

29.     On February 19, 2010 the Company filed an 8-K announcing that its auditor, M&B, has withdrawn its audit opinions for EGMI's financial statements for the years ended December 31, 2006, 2007 and 2008. The 8-K states:

> **Item 4.02   Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Audit Report.**
>
> (b)   On February 12, 2009, Mendoza Berger and Company, LLP ("M&B"), the independent auditors for Electronic Game Card, Inc. ("EGCI"), informed the EGCI Board of Directors that it had withdrawn its audit opinions for EGCI's financial statements for the years ended December 31, 2006, 2007 and 2008.
>
> M&B advised EGCI that it had become aware of irregularities in the audit confirmation of a bank account represented to M&B as having been held by Electronic Game Card (UK) Limited ("EGC Ltd"), a wholly owned subsidiary of EGCI that conducts its European operations.  Based upon M&B's investigation and inability to confirm the balances in the account, M&B concluded that its prior audits could no longer be relied upon and that it was withdrawing its audit opinions related to EGCI's financial statements for the years ended December 31, 2006, 2007 and 2008 as of February 12, 2010.
>
> Kevin Donovan, the Chief Executive Officer of ECCI,  has discussed all matters described above with M&B, and has provided a copy of this Form 8-K to M&B.
>
> EGCI intends to determine the adjustments necessary to reissue its prior financial statements, and file amended Annual Reports on Form 10-K for the years ended December 31, 2006, December 31, 2007 and December 31, 2008, and amended Quarterly Report on Form 10-Q for the periods ended March 31, 2009, June 30, 2009 and September 30, 2009 as soon as practicable.

30.     That same day the SEC issued an order temporarily halting trading from the Company's stock.  The SEC order states:

> It appears to the Securities and Exchange Commission that there is a lack of current and accurate information concerning the securities of Electronic Game Card, Inc. ("EGMI") because of questions regarding the accuracy of assertions by EGMI, and by others, in financial disclosures to investors concerning, among other things, the company's assets.
>
> The Commission is of the opinion that the public interest and the protection of investors require a suspension of trading in the securities of the above-listed company.
>
> THEREFORE, IT IS ORDERED, pursuant to Section 12(k) of the Securities Exchange Act of 1934, that trading in the securities of the above-listed company is

suspended for the period from 9:30 a.m. EST, on February 19, 2010, through 11:59 p.m. EST, on March 4, 2010.

By the Commission

Elizabeth M. Murphy

Secretary

31.　On November 8, 2012 the SEC filed a complaint against, among others, Timothy Quintanilla, in this Court for violations of the federal securities laws.  The SEC complaint's allegations of Quintanilla's misconduct provide a strong inference of his scienter.

## VII.　CLASS ACTION ALLEGATIONS

32.　Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons or entities who purchased or otherwise acquired EGMI common stock during the Class Period and who were damaged thereby.  Excluded from the Class are the current and former officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns; also excluded from the Class are Defendants and the current and former partners of M&B, members of their immediate families and their legal representatives, heirs, successors or assigns; also excluded is any entity in which any of the above excluded persons or entities have or had a controlling interest.

33.　The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, EGMI's securities were actively traded on the NASDAQ Bulletin Board. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class.  Members of the Class may be

identified from records maintained by EGMI or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

34.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct that occurred in violation of the federal securities laws and that is complained of herein.

35.     Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has no interests that are antagonistic to or in conflict with the interests of the Class as a whole, and Plaintiff has engaged competent counsel experienced in securities class actions and complex litigation.

36.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.

37.     Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts alleged herein;

(b)     whether statements made by M&B and Quintanilla to the investing public during the Class Period misrepresented material facts about the business, operations and management of EGMI;

(c)     whether M&B and Quintanilla failed to include material facts in the financial statements issued during the Class Period, making those filings materially false and misleading;

(d)     whether M&B and Quintanilla acted with the required state of mind;

(e)     to what extent the members of the Class have sustained damages and the proper measure of damages; and

(f)     whether the Defendants are controlling persons.

38.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## VIII.   APPLICABILITY OF PRESUMPTION OF RELIANCE:   FRAUD ON THE MARKET DOCTRINE

39.     At all relevant times, the market for EGMI's securities was an efficient market for the following reasons, among others:

(a)     EGMI's stock met the requirements for listing, and was listed and actively traded on NASDAQ Bulletin Board at all relevant times, a highly efficient and automated market;

(b)     As a regulated issuer, EGMI filed periodic public reports with the SEC;

(c)     During the class period, on average several hundreds of thousands of shares of EGMI's stock were traded on a weekly basis, demonstrating a very strong presumption of an efficient market;

(d)     EGMI's stock price reacted immediately to publicly-released corporate news;

(e)     EGMI regularly communicated with public investors via established market communication mechanisms, including, but not limited to, the regular dissemination of

press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(f)     Numerous NASD member firms were active market-makers in EGMI stock at all times during the Class Period.

40.     As a result of the foregoing, the market for EGMI's securities promptly digested current information regarding EGMI from all publicly available sources and reflected that information in EGMI's stock price. Under these circumstances, all purchasers of EGMI's securities during the Class Period suffered similar injury through their purchase of EGMI's securities at artificially-inflated prices and a presumption of reliance applies.

41.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about EGMI's business, prospects and operations.  These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of EGMI and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially-inflated at all relevant times.

42.     M&B's and Quintanilla's materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially-inflated prices. Class Members' losses from these purchases were proximately caused by the disclosures of the true facts, and were directly caused by the Class

Members' justifiable reliance on M&B's and Quintanilla's fraudulent and material statements, misrepresentations and omissions.

43.     Had Plaintiff and other members of the Class known of the material adverse information not disclosed by M&B and Quintanilla, or been aware of the truth behind M&B's and Quintanilla's material misstatements, they would not have purchased EGMI common stock at the artificially-inflated prices.

## IX.   NO SAFE HARBOR

44.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The safe harbor expressly exempts from its protection financial statements and results.  Further, many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by a partner of M&B who knew that those statements were false when made.

## X.    LOSS CAUSATION AND DAMAGES

45.     During the Class Period, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated EGMI's stock price and operated as a fraud or deceit on purchasers of EGMI stock by misrepresenting the Company's financial condition and business prospects.  Once M&B's and Quintanilla's misrepresentations and fraudulent conduct

were disclosed to the market, EGMI's stock price reacted negatively as the artificial inflation was removed from it.  As a result of their purchases of EGMI stock during the Class Period, Plaintiff and other members of the Class suffered economic loss.

46.    M&B's and Quintanilla's false and misleading statements had the intended effect and caused EGMI stock to trade at artificially inflated levels throughout the Class Period.

47.    As investors and the market became aware of M&B's and Quintanilla's  prior misstatements and omissions and that EGMI's s actual financial condition and business prospects were, in fact, not as represented, EGMI's stock price reacted negatively, damaging investors.

## FIRST CLAIM
## VIOLATION OF SECTION 10(b) OF
## THE EXCHANGE ACT AND RULE 10b-5
## PROMULGATED THEREUNDER AGAINST TIMOTHY QUINTANILLA

48.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49.    During the Class Period, Quintanilla and M&B carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase EGMI securities at artificially inflated prices during the Class Period.  In furtherance of this unlawful scheme, plan and course of conduct, Quintanilla and M&B, and each of them, took the actions set forth herein.

50.    Quintanilla and M&B (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading; and/or (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for EGMI securities in violation of Section

10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as a controlling person as alleged below.

51.     Quintanilla and M&B, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of EGMI as specified herein.

52.     Quintanilla and M&B employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of EGMI value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about EGMI and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of EGMI's securities during the Class Period.

53.     Quintanilla's primary liability, and controlling person liability in the case of all Defendants, arise from the following facts: (i) Defendants are partners of M&B; (ii) by virtue of their responsibilities and activities as partners of M&B, Defendants were privy to and participated in the creation, development and reporting of M&B's audit opinions; (iii) the Defendants enjoyed significant personal contact and familiarity with the other partners of M&B; and (iv) the Defendants were aware of the M&B's issuance of its audit opinions, relating to

EGMI's financial statements, to the investing public which they knew or recklessly disregarded was materially false and misleading.

54.     Quintanilla and M&B had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such material misrepresentations and/or omissions were made knowingly or recklessly and for the purpose and effect of concealing EGMI's financial condition and future business prospects from the investing public and supporting the artificially inflated price of its securities.   As demonstrated by Quintanilla's and M&B's false and misleading statements during the Class Period, Quintanilla and M&B, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by failing to take steps necessary to discover whether those statements were false or misleading.

55.     Quintanilla and M&B consented to the incorporation of M&B's unqualified auditor's report regarding EGMI's financial statements into the Company's 2006, 2007, and 2008 Form 10-KSB.   As detailed herein, the misrepresentations contained in, or the material facts omitted from, the Form 10-KSBs included the fact that:  (i) the financial statements that M&B certified as being presented in conformity with GAAP were not presented in conformity with GAAP, and (ii) M&B's audit, which it attested was conducted in accordance with GAAS, was conducted in violation of GAAS.

56.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of EGMI securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of EGMI publicly-traded securities were artificially inflated, and relying directly or indirectly on the false

and misleading statements made by Quintanilla and M&B, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Quintanilla and M&B but not disclosed in public statements by Quintanilla and M&B during the Class Period, Plaintiff and the other members of the Class acquired EGMI securities during the Class Period at artificially high prices and were damaged thereby.

57.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that EGMI was experiencing, which were not disclosed by Quintanilla and M&B, Plaintiff and other members of the Class would not have purchased or otherwise acquired their EGMI securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

58.     By virtue of the foregoing, Quintanilla and M&B have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

59.     As a direct and proximate result of Quintanilla's and M&B's wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
## VIOLATION OF SECTION 20(a) OF
## THE EXCHANGE ACT AGAINST ALL DEFENDANTS

60.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

61.    Defendants acted as controlling persons of EGMI within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and rights due to their being partners of M&B, participation in and/or awareness of M&B's operations and/or intimate knowledge of the false statements made by M&B with the SEC and disseminated to the investing public, the Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Quintanilla and M&B, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Defendants were provided with or had unlimited access to copies of M&B's audit opinions and work papers and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62.    Moreover, the Defendants had direct and supervisory involvement in the day-to-day operations of M&B and, therefore, are presumed to have had the power to control or influence the issuance of the audit opinions giving rise to the securities violations as alleged herein, and exercised the same.

63.    As set forth above, Quintanilla and M&B each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of Defendants' positions as controlling persons, Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities at artificially inflated prices during the Class Period.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)  Awarding compensatory damages in favor of Plaintiff and the other Class members against Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(b)  Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(c)  Such other and further relief as the Court may deem just and proper.

## XI.   <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.

Dated:  January 4, 2013                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: _____
Timothy W. Brown (TB 1008)
Laurence Rosen (LR 5733)
Phillip Kim (PK 9384)
275 Madison Avenue
34th Floor
New York, NY 10016
Tel: (212) 686-1060
Fax: (212) 202-3827

*Counsel for Plaintiff*

**REDACTED**

## CERTIFICATION

The individual or institution listed below (the "Plaintiff") authorizes the Rosen Law Firm, P.A. to file an action or amend a current action under the federal securities laws to recover damages and to seek other relief against the partners of Mendoza Berger & Co., LLP, ("M&B"), the auditor of Electronic Game Card, Inc. The Rosen Law Firm, P.A. agrees to prosecute the action on a contingent fee basis not to exceed one-third of any recovery and will advance all costs and expenses. Any legal fees and expenses will be determined by, and payable, only upon order of the U.S. District Court.

Plaintiff declares, as to the claims asserted under the federal securities laws, that:

1.      I have reviewed the complaint against the partners of M&B, and I retain the Rosen Law Firm, P.A. as counsel in this action for all purposes.

2.      I did not engage in transactions in the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in this or any other litigation under the securities laws of the United States.

3.      I am willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.

4.      The following is a list of all of the purchases and sales I have made in EGMI securities during the Class Period set forth in the complaint. I have made no transactions during the class period in the securities that are the subject of this lawsuit except those set forth below.

| Number of Shares Purchased or Sold | Date(s) Purchased | Price Paid Per Share | Date(s) Sold (if applicable) | Price Sold Per Share |
|---|---|---|---|---|
| | | $ | | $ |
| | *SEE* | *ATTACHED* | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |

PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM: (212) 202-3827

5.   I have not, within the three years preceding the date of this certification, sought to serve or served as a representative party on behalf of a class in an action involving alleged violations of the federal securities laws, except: for the following company(ies):

6.   I will not accept any payment for serving as a representative party beyond my pro rata share of any recovery, except reasonable costs and expenses, such as travel expenses and lost wages directly related to the class representation, as ordered or approved by the court pursuant to law.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ___3___ day of _JANUARY_, 2013.

Signature: _Penny Pace_
Name: Penny Pace
Address:

Phone:
E-mail:

Item. 4 (continue from prior page if needed)

| Number of Shares Purchased or Sold | Date(s) Purchased | Price Paid Per Share | Date(s) Sold (if applicable) | Price Sold Per Share |
|---|---|---|---|---|
| | | $ | | $ |
| | | $ | | $ |
| | | $ Attached | | $ |
| see | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |

PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM at (212) 202-3827
OR MAIL TO:
THE ROSEN LAW FIRM PA
275 MADISON AVENUE, 34TH FLOOR
NEW YORK, NY  10016

2

| Penny Pace Trades Date Purchased | Number of Shares Purchased | Cost per Share |
|---|---|---|
| 6/3/2009 | 8,780 | ($0.86) |
| 6/15/2009 | 500 | ($1.10) |
| 6/15/2009 | 3,750 | ($1.10) |
| 6/15/2009 | 2,500 | ($1.10) |
| 6/15/2009 | 200 | ($1.10) |
| 6/15/2009 | 1,350 | ($1.10) |
| 6/15/2009 | 790 | ($1.10) |
| 6/19/2009 | 10,000 | ($1.32) |
| 6/19/2009 | 200 | ($1.32) |
| 6/19/2009 | 3,435 | ($1.32) |
| 6/24/2009 | 1,500 | ($1.17) |
| 6/24/2009 | 1,000 | ($1.17) |
| 6/24/2009 | 5,000 | ($1.17) |
| 6/24/2009 | 1,500 | ($1.17) |
| 7/8/2009 | 1,430 | ($1.13) |
| 7/27/2009 | 5,245 | ($1.60) |
| 7/27/2009 | 1,255 | ($1.60) |
| 7/28/2009 | 670 | ($1.58) |
| 7/28/2009 | 700 | ($1.58) |
| 7/28/2009 | 4,630 | ($1.58) |
| 7/28/2009 | 5,000 | ($1.45) |
| 8/3/2009 | 1,870 | ($1.65) |
| 8/3/2009 | 2,500 | ($1.65) |
| 8/3/2009 | 1,000 | ($1.65) |
| 8/3/2009 | 680 | ($1.65) |
| 8/4/2009 | 1,800 | ($1.65) |
| 8/4/2009 | 4,260 | ($1.65) |
| 8/5/2009 | 6,211 | ($1.65) |
| 8/7/2009 | 2,310 | ($1.68) |
| 8/7/2009 | 4,100 | ($1.68) |
| 8/7/2009 | 5,000 | ($1.70) |
| 8/7/2009 | 2,500 | ($1.70) |
| 8/7/2009 | 1,482 | ($1.70) |
| 8/10/2009 | 3,164 | ($1.65) |
| 8/12/2009 | 1,000 | ($1.54) |
| 8/12/2009 | 5,000 | ($1.54) |
| 8/14/2009 | 400 | ($1.65) |
| 8/14/2009 | 4,000 | ($1.65) |
| 8/19/2009 | 4,918 | ($1.60) |
| 8/19/2009 | 500 | ($1.60) |
| 8/19/2009 | 500 | ($1.60) |
| 8/21/2009 | 9,000 | ($1.63) |
| 8/21/2009 | 202 | ($1.63) |
| 8/24/2009 | 662 | ($1.62) |
| 8/24/2009 | 5,000 | ($1.62) |
| 8/24/2009 | 510 | ($1.62) |
| 8/24/2009 | 6,000 | ($1.62) |

| | | |
|---|---:|---:|
| 8/26/2009 | 1,900 | ($1.45) |
| 8/26/2009 | 2,500 | ($1.45) |
| 8/26/2009 | 250 | ($1.47) |
| 8/26/2009 | 300 | ($1.47) |
| 8/26/2009 | 500 | ($1.47) |
| 8/26/2009 | 1,621 | ($1.47) |
| 8/26/2009 | 3,000 | ($1.47) |
| 8/26/2009 | 1,225 | ($1.47) |
| 8/27/2009 | 6,942 | ($1.34) |
| 8/27/2009 | 200 | ($1.34) |
| 8/27/2009 | 1,250 | ($1.38) |
| 8/27/2009 | 2,500 | ($1.38) |
| 9/24/2009 | 4,000 | ($1.47) |
| 9/24/2009 | 4,703 | ($1.43) |
| 10/2/2009 | 3,623 | ($1.37) |
| 10/5/2009 | 3,615 | ($1.31) |
| 10/5/2009 | 201 | ($1.31) |
| 11/5/2009 | 5,000 | ($1.55) |
| 11/5/2009 | 3,000 | ($1.55) |
| 11/13/2009 | 6,400 | ($1.80) |
| 11/13/2009 | 1,600 | ($1.80) |
| 11/19/2009 | 1,000 | ($1.63) |
| 11/19/2009 | 500 | ($1.63) |
| 11/19/2009 | 5,000 | ($1.63) |
| 11/19/2009 | 500 | ($1.63) |
| 11/19/2009 | 1,000 | ($1.63) |
| 11/30/2009 | 1,175 | ($1.51) |
| 11/30/2009 | 6,825 | ($1.51) |
| 11/30/2009 | 5,507 | ($1.48) |
| 11/30/2009 | 2,493 | ($1.48) |
| 12/9/2009 | 2,050 | ($1.51) |
| 12/9/2009 | 1,000 | ($1.51) |
| 12/10/2009 | 650 | ($1.46) |
| 12/14/2009 | 5,000 | ($1.41) |
| 12/15/2009 | 3,900 | ($1.28) |
| 12/18/2009 | 590 | ($1.10) |
| 1/26/2010 | 948 | ($1.16) |
| 2/1/2010 | 4,300 | ($0.92) |
| 2/1/2010 | 500 | ($0.92) |
| 2/5/2010 | 2,857 | ($1.00) |

| Date Sold | Number of Shares Sold | Price per Share |
|---|---|---|
| 6/8/2009 | 4,000 | $0.92 |
| 6/8/2009 | 5,007 | $0.92 |
| 6/15/2009 | 8,037 | $1.15 |
| 6/15/2009 | 195 | $1.15 |
| 6/15/2009 | 858 | $1.15 |
| 6/29/2009 | 30 | $1.29 |
| 7/6/2009 | 5,000 | $1.29 |
| 7/6/2009 | 1,000 | $1.29 |
| 7/6/2009 | 200 | $1.29 |
| 7/6/2009 | 2,770 | $1.29 |
| 7/17/2009 | 495 | $1.25 |
| 7/17/2009 | 2,600 | $1.25 |
| 7/17/2009 | 2,500 | $1.25 |
| 7/17/2009 | 3,500 | $1.25 |
| 7/17/2009 | 255 | $1.25 |
| 7/17/2009 | 5,715 | $1.25 |
| 7/31/2009 | 3,400 | $1.58 |
| 7/31/2009 | 100 | $1.58 |
| 7/31/2009 | 3,100 | $1.58 |
| 7/31/2009 | 100 | $1.58 |
| 7/31/2009 | 100 | $1.58 |
| 7/31/2009 | 100 | $1.58 |
| 7/31/2009 | 2,000 | $1.58 |
| 7/31/2009 | 1,000 | $1.58 |
| 7/31/2009 | 100 | $1.58 |
| 7/31/2009 | 100 | $1.58 |
| 7/31/2009 | 1,800 | $1.58 |
| 7/31/2009 | 100 | $1.58 |
| 7/31/2009 | 100 | $1.58 |
| 7/31/2009 | 2,000 | $1.58 |
| 7/31/2009 | 1,500 | $1.58 |
| 7/31/2009 | 100 | $1.58 |
| 7/31/2009 | 100 | $1.58 |
| 7/31/2009 | 100 | $1.58 |
| 7/31/2009 | 100 | $1.58 |
| 7/31/2009 | 1,500 | $1.58 |
| 8/3/2009 | 2,000 | $1.67 |
| 8/3/2009 | 1,500 | $1.67 |
| 8/3/2009 | 2,550 | $1.67 |
| 8/4/2009 | 100 | $1.68 |
| 8/4/2009 | 200 | $1.68 |
| 8/4/2009 | 500 | $1.68 |
| 8/4/2009 | 500 | $1.68 |
| 8/4/2009 | 200 | $1.68 |
| 8/4/2009 | 100 | $1.68 |
| 8/4/2009 | 300 | $1.68 |
| 8/4/2009 | 2,600 | $1.68 |
| 8/4/2009 | 100 | $1.68 |

| | | |
|---|---|---|
| 8/4/2009 | 500 | $1.68 |
| 8/4/2009 | 960 | $1.68 |
| 8/5/2009 | 1,123 | $1.68 |
| 8/5/2009 | 1,000 | $1.68 |
| 8/5/2009 | 11,900 | $1.68 |
| 8/5/2009 | 2,000 | $1.68 |
| 8/5/2009 | 188 | $1.68 |
| 8/7/2009 | 5,000 | $1.73 |
| 8/7/2009 | 1,410 | $1.73 |
| 8/10/2009 | 500 | $1.72 |
| 8/13/2009 | 435 | $1.64 |
| 8/13/2009 | 2,000 | $1.64 |
| 8/13/2009 | 10,000 | $1.64 |
| 8/13/2009 | 5,211 | $1.64 |
| 8/14/2009 | 2,900 | $1.68 |
| 8/14/2009 | 1,500 | $1.68 |
| 8/19/2009 | 100 | $1.63 |
| 8/19/2009 | 100 | $1.63 |
| 8/19/2009 | 1,700 | $1.63 |
| 8/19/2009 | 100 | $1.63 |
| 8/19/2009 | 100 | $1.63 |
| 8/20/2009 | 100 | $1.63 |
| 8/20/2009 | 2,080 | $1.63 |
| 8/20/2009 | 1,638 | $1.63 |
| 8/21/2009 | 5,000 | $1.65 |
| 8/21/2009 | 2,500 | $1.65 |
| 8/21/2009 | 1,702 | $1.65 |
| 8/26/2009 | 1,000 | $1.51 |
| 8/26/2009 | 750 | $1.50 |
| 8/26/2009 | 100 | $1.54 |
| 8/26/2009 | 8,100 | $1.52 |
| 8/26/2009 | 3,700 | $1.50 |
| 8/26/2009 | 1,000 | $1.50 |
| 8/26/2009 | 2,000 | $1.50 |
| 8/27/2009 | 100 | $1.42 |
| 8/27/2009 | 100 | $1.42 |
| 8/27/2009 | 2,000 | $1.42 |
| 8/27/2009 | 100 | $1.42 |
| 8/27/2009 | 7,000 | $1.42 |
| 8/27/2009 | 2,600 | $1.42 |
| 8/27/2009 | 100 | $1.42 |
| 8/27/2009 | 1,960 | $1.42 |
| 8/28/2009 | 2,600 | $1.45 |
| 8/28/2009 | 1,150 | $1.45 |
| 9/25/2009 | 500 | $1.54 |
| 9/25/2009 | 3,500 | $1.54 |
| 9/25/2009 | 200 | $1.54 |
| 9/25/2009 | 500 | $1.54 |

| Date | Number of Shares | Cost Per Share |
|---|---|---|
| 9/25/2009 | 1,000 | $1.54 |
| 9/25/2009 | 500 | $1.54 |
| 9/25/2009 | 1,000 | $1.54 |
| 9/25/2009 | 1,503 | $1.54 |
| 10/2/2009 | 1,520 | $1.39 |
| 10/2/2009 | 1,520 | $1.39 |
| 10/2/2009 | 100 | $1.39 |
| 10/2/2009 | 100 | $1.39 |
| 10/2/2009 | 100 | $1.39 |
| 10/2/2009 | 100 | $1.39 |
| 10/2/2009 | 203 | $1.39 |
| 10/5/2009 | 2,600 | $1.36 |
| 10/5/2009 | 1,216 | $1.36 |
| 11/5/2009 | 200 | $1.60 |
| 11/5/2009 | 2,500 | $1.60 |
| 11/5/2009 | 1,000 | $1.60 |
| 11/5/2009 | 4,300 | $1.60 |

| Penny Pace IRA | Date Purchased | Number of Shares Purchased | Cost Per Share |
|---|---|---|---|
| | 11/17/2009 | 1,788 | ($1.23) |
| | 11/19/2009 | 3,000 | ($1.63) |
| | 1/25/2010 | 2,774 | ($1.73) |